IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

DR. ANTOINE EL-HAGE

:

v.                            :         Civil Action No. DKC 2006-1650

:

MICHAEL O. LEVITT,
Secretary, U.S. Department        :
of Health and Human Services

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination case is the motion of Defendant, Michael O. Levitt, Secretary of the U.S. Department of Health and Human Services, to dismiss or, in the alternative, for summary judgment. (Paper 10). Because the court will rely on materials outside the pleadings, the motion will be treated as one for summary judgment. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

## I. Background

The following facts are either undisputed or construed in the light most favorable to Plaintiff Dr. Antoine El-Hage. Plaintiff, a 56 year old man of Lebanese origin, is employed in the Clinical Investigations Branch at the Division of Scientific Investigations (DSI) of the Food and Drug Administration (FDA). On June 28, 2006, Plaintiff filed a three-count complaint against Defendant in this court, alleging that Defendant discriminated against him based on

(Count I) national origin, (Count II) age, or both in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Additionally, Plaintiff alleges that (Count III) Defendant retaliated against him for opposing unlawful employment practices in violation of Title VII. 42 U.S.C. § 2000e-3(a).

Defendant asserts that Plaintiff has failed to show that he was the victim of illegal discrimination, and, with respect to some of his claims, to exhaust his administrative remedies.

Plaintiff was hired by Defendant to work in its Clinical Investigations Branch at the Division of Scientific Investigations (DSI) of the Food and Drug Administration (FDA) in 1984. After 15 years in that office, he was promoted to be the Branch Chief of one of that office's two branches. Plaintiff's then-supervisor rated his performance as exceeding expectations and recalls that his work was "excellent or outstanding." (Paper 1, Ex. B, Performance Evaluation Plan; Paper 1, Ex. C, Woollen Aff., at 2).

In September 2001, Dr. Joanne Rhoads became the Director of DSI. Thereafter, Plaintiff reported to Dr. Rhoads. Around February 2002, Dr. Rhoads announced that Plaintiff was being appointed to the position of Associate Director of Good Clinical Practices. Plaintiff retained his preexisting title and duties as Branch Chief of Good Clinical Practices Branch II. As Associate

Director, Plaintiff worked with Branch I to help alleviate a significant backlog of cases that had accumulated there.

On February 3, 2003, Plaintiff forwarded an email from a colleague to a source outside of the Department of Health and Human Services.  That individual had contacted Plaintiff because of concerns regarding a clinical trial in which said individual had been a participant.  Plaintiff's colleague was distraught upon learning that Plaintiff had publicly released her email to a disgruntled subject of a clinical trial.  (Paper 10, Ex. 9, Internal Affairs Investigation Report, Att.1).  The colleague contacted the Deputy Director of DSI, Joe Salewski, to express concern for her safety as a result of her identity being revealed. (*Id*.).  Andrea Masciale, Director of the Division of Information Disclosure Policy at the Center for Drug Evaluation and Research, reviewed the matter and concluded that the release of the information within the email was a violation of Department policy against the unauthorized release of confidential commercial information. (Paper 10, Ex. 10, Parham Decl. ¶ 6).

The FDA Staff Manual Guide 2280.10 addresses the safeguarding and release of non-public information entrusted to the FDA. (Paper 10, at 10 and Ex. 11).  In the year preceding Plaintiff's unauthorized disclosure of confidential information, both the Deputy Commissioner of the FDA and the Acting Principal Deputy Commissioner sent email reminders to all employees on the

3

importance of safeguarding non-public information. (Paper 10, Ex. 12). Employees who handle non-public information are responsible for strictly adhering to the procedures regarding its safeguarding and those who inappropriately release non-public information are subject to reprimand, and possible removal from Federal service. (*Id.* at 10-11). If an employee is suspected of misconduct, the matter must be forwarded to the Office of Internal Affairs (OIA) for investigation. (Paper 10, Ex. 11).

Plaintiff alleges that in April 2003, he complained to Dr. Rachel Behrman to complain that Dr. Rhoads was pressuring him to falsely document poor work evaluations of some older, non-American employees under his supervision. (Paper 24, Ex. A ¶¶ 16, 17, 27). Plaintiff alleges that he informed Dr. Behrman that he believed Dr. Rhoads actions were discriminatory. (*Id.*). Defendant concedes that Plaintiff met with Dr. Behrman at that time, but denies that the conversation included any allegation of discrimination. (Paper 31, at 2). Nonetheless, Defendant concedes that the conversation could be viewed as prior oppositional activity for purposes of considering his motion for summary judgment on Plaintiff's retaliation claim. (*Id.*).

Some time after Plaintiff's unauthorized email, but before Dr. Rhoads received the completed OIA report, Dr. Rhoads met with Plaintiff to discuss the possibility of a negotiated reprimand for his malfeasance. (Paper 10, Ex. 1, Rhoads Decl. ¶ 28). Dr. Rhoads

4

proposed that Plaintiff resign his supervisory Branch Chief
position, but retain his Associate Director title because it was
a non-supervisory position. (*Id.*). Dr. Rhoads believed this would
be an appropriate way to reprimand Plaintiff for his error in
judgment while allowing him to avoid the embarrassment of a formal
suspension. (*Id.*). Plaintiff rejected the offer because, though
he admitted that he released the information, he maintained that
the release was trivial and that he would not suffer adverse
consequences from it. (*Id.*). In late May 2003, Dr. Rhoads
received a copy of the OIA report concluding that Plaintiff had
released non-public information. Dr. Rhoads concluded that
Plaintiff's revealing of confidential information "demonstrated a
serious flaw in judgment." (Paper 10, Ex. 1, Rhoads Decl. ¶ 10).

An OIA investigation determined that Plaintiff's release of
the information within the email was a violation of FDA policy
against the unauthorized release of confidential commercial
information. (*Id.* ¶ 29). Plaintiff subsequently expressed remorse
over his unauthorized release of his colleague's identity and
acknowledged that his forwarding of the email demonstrated poor
judgment. (Paper 10, Ex. 9, at 4). In over 20 years of prior
service at FDA, Plaintiff had no prior ethical or conduct
violations on his record. (Paper 24, Ex. C, Woolen Aff., at 3).

On June 23, 2003, Dr. Rhoads decided to reassign Plaintiff
from his supervisory Branch Chief/Associate Director position to

the position of Master Regulatory Review Pharmacologist. (Paper
10, Ex. 1, Rhoads Decl., Att. A). This reassignment did not alter
Plaintiff's status as a GS-15 employee and did not reduce his
salary. (Paper 10, Ex. 16). It did alter his title and his
responsibilities, though some of his duties remained the same. The
newly reassigned position was the same position that Plaintiff had
held for many years prior to his promotion to a supervisory level
job. (Paper 10, at 5). Dr. Rhoads stated that she made her
decision in response to Plaintiff's release of confidential
commercial information in violation of Department regulations.
(Paper 10, Ex.1, Rhoads Decl. ¶ 29). She also stated that she
received complaints about Plaintiff's supervisory skills. (*Id*. ¶¶
32, 33). Dr. Rhoads believed that the unauthorized release of the
confidential commercial information was merely a "recent and
serious example" of his "not acceptable" behavior as a supervisor.
(*Id*. ¶ 10 and Att. A). Defendant asserts that because of
Plaintiff's actions, Dr. Rhoads lost trust in Plaintiff's ability
to supervise. (*Id*. at 45).

Plaintiff was also suspended for two weeks as a result of his
unauthorized release of confidential commercial information.
Employee relations staff had indicated to Mr. Salewski that a two
week suspension was "the standard penalty." (Paper 10, Ex. 5,
Salewski Decl. ¶ 11). Mr. Salewski notified Plaintiff of the
proposed fourteen day suspension on July 31, 2003. Mr. Salewski

determined that this was the appropriate level of the punishment in light of Plaintiff's experience at FDA, the supervisory nature of his position, and the clear and apparent nature of the violated rules. (Paper 10, Ex. 14, Salewski Ltr., at 5). Mr. Salewski determined that Plaintiff's behavior demonstrated "reckless disregard for the required ethical standard." (*Id*.). Subsequently, Plaintiff's suspension was reduced to seven days as part of a settlement agreement reached through the collective bargaining process. (Paper 10, Ex. 20).

Thereafter, Plaintiff has been denied the opportunity to attend public speaking engagements on behalf of his office, directed to move his desk to a smaller office, briefly threatened with the loss of his right to work an atypical work schedule, and given a lower performance rating than he had received in previous years. He contends that his release of the information did not warrant the punishment imposed. He alleges that Defendant inflicted the ensuing difficulties upon him in retaliation for his objecting to the reassignment and subsequent suspension.

On July 21, 2003, Plaintiff contacted an EEO officer to complain about his demotion. On October 24, 2003, he filed a formal complaint of discrimination claiming that he was demoted because of his national origin, color, age, and sex. On March 24, 2005, Plaintiff requested an EEOC hearing on the matter. On April 16, 2004, Plaintiff amended his EEO complaint to include a

retaliation claim based on his filing of the previous EEO complaint. Principally, Plaintiff alleged that his 2003 performance rating was lowered and he was denied public speaking opportunities in retaliation for his filing an EEO claim. On September 15, 2005, Plaintiff sought informal EEO counseling for an alleged retaliatory or discriminatory denial of a cash award. Plaintiff did not file a formal administrative complaint concerning the denial of the award and next raised that matter in his complaint to this court. Plaintiff seeks a declaration that Defendant violated his civil rights, an injunction against future violation, lost wages and benefits, compensatory damages, and reinstatement. Defendant filed a motion to dismiss or, in the alternative, for summary judgment on November 27, 2006. (Paper 10). Plaintiff opposed the motion and requested discovery. (Paper 24). Defendant filed a corrected declaration and a reply. (Paper 31).

## II. Standard of Review

Defendant has moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P.56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed.R.Civ.P.12(b); *Gadsby by Gadsby v. Grasmick*, 109

F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her

9

claim.   "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.   Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.   *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.   However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

Plaintiff alleges that Defendant unlawfully discriminated against him on the basis of age and national origin and in retaliation for Plaintiff's protected activities.   Principally, Plaintiff claims that he was demoted, denied a cash bonus, received a lower performance rating, denied public speaking opportunities, denied his prior inspection responsibilities, subjected to threat of OIA investigation, forced to change offices, and briefly threatened with an altered work schedule.   Defendant denies the

allegations and moves to dismiss or in the alternative for summary judgment.   Defendant asserts that Plaintiff failed to exhaust his administrative remedies, cannot establish a *prima facie* case of age, national origin or retaliatory discrimination, and fails to undermine Defendant's legitimate nondiscriminatory reasons for his actions as pretext.

## A. National Origin and Age Discrimination Claims (Counts I and II)[1]

### i. *Prima Facie* Case

A plaintiff may defeat summary judgment and establish a claim for employment discrimination through one of two methods of proof. First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that his race, sex, national origin or age was a motivating factor in the employer's adverse employment action.   *See, e.g.*, *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc).   "The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination."   *Id*. at 285.   Once the plaintiff has presented a

---

[1]   Because the ADEA's language was "derived in haec verba from Title VII," and it is read in pari materia with Title VII, the court analyzes Plaintiff's claims under both statutes together. *Smith v. Jackson*, 544 U.S. 228 (2005)(citing *Lorillard v. Pons*, 434 U.S. 575, 584 (1978)).

*prima facie* case, "the burden [of production] shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 285. If the employer meets its burden of production, "the *McDonnell Douglas* frame-work-with its presumptions and burdens-disappear[s], and the sole remaining issue [is] discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)(internal quotation marks and citations omitted). "In other words, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Hill*, 354 F.3d at 285 (quoting *Reeves*, 530 U.S. at 143).

To establish a *prima facie* case of discriminatory demotion on the basis of national origin or age, a plaintiff-employee must satisfy four criteria, that (1) he is a member of a protected class; (2) he was qualified for his job and was performing it satisfactorily; (3) despite his qualifications he was removed from his position and reassigned to a lesser position; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Love-Lane v. Martin,* 355 F.3d 766, 787 (4th Cir. 2004). Plaintiff's burden to establish a *prima facie* case is "not onerous" but only requires that a plaintiff prove each element by a preponderance of the evidence.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

With regard to his national origin claim, Plaintiff meets the first element of the *prima facie* case by showing that he is of Middle Eastern (Lebanese) national origin. (Paper 1 ¶ 5). Similarly, he satisfies the first criterion for his age discrimination claim by showing that he is 56 years of age, which places him well within the protected age group. *(Id.).* *See* 29 U.S.C. § 631(a).[2]

Plaintiff also satisfies the second prong of the *prima facie* case by presenting evidence that he was qualified for the position he held and that he was meeting his employer's legitimate expectations at the time of his reassignment. As discussed above, Dr. Rhoads allegedly concluded that while Plaintiff's skills were strong, his judgment and leadership were not at the level she wanted in a supervisory employee. Because the plaintiff's burden of proof at the *prima facie* stage "is not onerous" however, *Burdine*, 450 U.S. at 253, Plaintiff has made a sufficient showing that he was qualified for his position by presenting his consistently positive performance evaluations. (Paper 24, Exs. B, G). *See De la Cruz v. New York City Human Res. Admin.*, 82 F.3d 16, 21 (2ᵈ Cir. 1996)("a performance evaluation that is positive

---

[2]    To be a member of the class protected by the ADEA, plaintiff must be over the age of 40.

overall is sufficient to withstand summary judgment at the *prima facie* stage.").

Defendant alleges that Plaintiff failed to meet his burden under the third element because Defendant's reassigning of Plaintiff to a review position did not reduce Plaintiff's salary, GS grade, or benefits level. (Paper 10, at 30-32).[3]  This argument is unavailing.  A "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).  "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Id*. at 256-57.  Whether deemed a reassignment or a demotion, Plaintiff was removed from his position as Branch Chief and Associate Director of Good Clinical Practice Chief where he held supervisory authority and placed in a position of lesser responsibility and with a lesser title of Master Regulatory Review Pharmacologist.  Thus, while Plaintiff's compensation remained

---

[3] Plaintiff appears to assert that the denial of the cash bonus after the demotion satisfies the pecuniary detriment aspect of his claim. Paper 24, at 22. It is not clear if he contends that denial of the cash bonus itself was discriminatory, or only retaliatory.  Regardless, that claim was not properly and thoroughly raised in administrative proceedings, as will be explained.

constant, his job title and his level of responsibility were both altered to his significant detriment.  Accordingly, Plaintiff meets his burden to establish the third element of the *prima facie* case.

The final prong of the *prima facie* case requires a plaintiff to show that he was replaced by someone from outside the protected class.  Plaintiff satisfies the final prong by presenting evidence that he was replaced by an individual who was "significantly younger" than he and who was not of Middle Eastern origin.[4]  (Paper 1 ¶ 30).

## ii. Legitimate Nondiscriminatory Reasons

Defendant asserts that if Plaintiff suffered any adverse employment actions, they were because of legitimate nondiscriminatory reasons.  Principally, Defendant maintains that the finding that Plaintiff was "either extraordinarily careless or demonstrated very bad judgment" in his unauthorized release of confidential information was the legitimate basis for his reassignment.  (Paper 24, Ex. 6, Temple Ltr., at 4).  Defendant states that Plaintiff's unauthorized release of confidential information and his subsequent "careless examination . . . or deliberate misrepresentation" of his actions upon confrontation about them was the legitimate nondiscriminatory basis for his

---

[4]  Plaintiff seeks discovery to confirm the age and national origin of his replacement, Dr. Ball.  (Paper 24, at 44).  Defendant concedes that Dr. Ball was born in 1960 and is not of Middle Eastern origin.  (Paper 31, at 24 n. 8).

reassignment to a non-supervisory position. (*Id.* at 3). Additionally, Dr. Rhodes stated that she received complaints about Plaintiff's supervisory skills. (Paper 10 at 33, Ex. 1, Rhoads Decl. ¶ 32). Thus, she believed that the unauthorized release of the confidential commercial information was merely a "recent and serious example" of his "not acceptable" behavior as a supervisor. (*Id.* ¶ 10 and Att. A). Defendant maintains that because of his actions, Dr. Rhoads lost confidence in Plaintiff's ability to supervise. (Paper 10 at 45). Defendant has proffered a legitimate nondiscriminatory reason for the alleged adverse employment action. Accordingly, Defendant meets its burden of production and the burden shifts back to Plaintiff to establish that Defendant's justification was pretext and that unlawful discrimination was the real reason for the adverse employment actions.

### iii. Pretext

Ultimately, Plaintiff's claims fail because he does not offer evidence sufficient to show that Defendant's legitimate nondiscriminatory reason for his reassignment was pretextual.

An employer is entitled to judgment where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. Thus, a

16

key factor for courts to consider is "the probative value of the proof that the employer's explanation is false." *Id.* at 149. Fourth Circuit and Supreme Court precedent explain that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hux v. City of Newport News*, 451 F.3d 311, 317 (4th Cir. 2006)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

Unfortunately for Plaintiff, he has not put forth evidence showing that Defendant's proffered legitimate explanation was false. Aside from his denials as to the veracity of their explanations, nothing in the record supports an inference that those explanations were pretextual. Specifically, there is no evidence that Plaintiff's reassignment was not based solely on his inappropriate behavior regarding the release of confidential information in violation of Department regulations and other legitimate judgment calls about Defendant's performance as a supervisor.

The fact that Defendant had a good track record before he worked for Dr. Rhoads does not establish that criticisms of his later performance were false or that the real reason for his firing was discrimination or retaliation. *See Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 444 (4th Cir. 1998). Nor is pretext established by evidence that Dr. Rhoads gave Plaintiff favorable reviews in her first two years reviewing his performance. Dr. Rhoads and Mr.

Salewski were immediately concerned upon discovering Plaintiff's release of confidential commercial information. The actions taken against Plaintiff ensued after his supervisors learned of his malfeasance. Plaintiff fails to undermine Defendant's explanation that any actions taken against Plaintiff ensued as a result of this incident.

When reviewing a defendant's proffered reason for discharge and a plaintiff's corresponding claim of pretext, the court must "keep in mind that Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998)(internal quotation marks omitted)(quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir. 1995)). The court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions." *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted)(quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)). Thus, once Defendant articulated a nondiscriminatory reason for Plaintiff's reassignment, it did not become this court's "province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason" for the adverse employment action. *DeJarnette*, 133 F.3d at 299 (internal quotation marks omitted) (quoting *Giannopoulos*, 109 F.3d at 410-11).

Plaintiff failed to offer sufficient evidence that Defendant's proffered reason for his reassignment was pretext. Plaintiff's best efforts to establish pretext are his contentions that the punishment was excessive and that Dr. Rhoads made stray offensive remarks that implicate age and national origin. His belief that Defendant was overly punitive is insufficient. Taking the evidence in the light most favorable to Plaintiff, it shows only that Defendant lost confidence in Plaintiff's supervisory abilities shortly after Plaintiff disclosed confidential information without authorization. Plaintiff's speculation that Defendant's alleged justification must be a pretext is not sufficient evidence to sustain a claim under Title VII. *Holmes v. e.spire Communications*, 135 F.Supp.2d 657, 663-64 (D.Md. 2001). The non-moving party cannot create a genuine issue of material fact from mere speculation. *Khan v. Worcester County*, 24 Fed.Appx. 183 (4th Cir. 2001).

Plaintiff's assertion that Defendant made offensive comments regarding age and national origin are also insufficient to establish pretext. The Fourth Circuit has consistently held that "general or ambiguous remarks referring to the process of generational change create no triable issue of age discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). While this court has zero tolerance for offensive remarks about age and national origin, "Title VII was not designed to create a federal

remedy for all offensive language and conduct in the workplace." *Hopkins v. Baltimore Gas & Elec.*, 77 F.3d 745, 754 (4th Cir. 1996). Moreover, Plaintiff has failed to present evidence indicating that his age or national origin played any role in his reassignment. Indeed, the decision to reassign Plaintiff was made by a woman who is only two years younger than he is and his interim replacement was a man who is the same age as Plaintiff. (Paper 10, at 46, Ex. 1, Rhoads Decl. ¶ 1 and Ex. 5, Salewski Decl. ¶ 2).

### iv.  Cash Bonus

To the extent that Plaintiff might be raising a claim that the denial of the cash bonus was itself discriminatory, the claim is subject to dismissal for failure to exhaust administrative remedies.  Plaintiff failed to file a formal complaint of retaliation with regard to the alleged denial of the 2005 cash award with the EEOC despite being notified of his right to file a formal complaint.  Plaintiff correctly cites *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), as holding that retaliation claims almost always relate back to previously filed EEO charges and, therefore, may be raised for the first time in district court without the requirement that a plaintiff have exhausted his administrative remedies.  However, *Nealon* is inapposite where, as here, the original EEO complaint was no longer pending before the EEOC when the plaintiff learned of the later alleged act of retaliation.  Indeed, in adopting the relation back doctrine in

20

*Nealon*, the Fourth Circuit stated that, the rule is the "inevitable corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations *during the pendency of the case before the Commission*."   *Id.* (internal quotations and citation omitted) (emphasis added).   Thus, because Plaintiff failed to file a formal complaint regarding the denied cash award and because he withdrew the original EEOC complaint on May 27, 2005 before he was denied the cash award in September 2005, Plaintiff failed to exhaust his administrative remedies with regard to the denied cash award. Because Plaintiff failed to file a administrative complaint within the time specified by his notice of his right to do so, his complaint to the denied cash award is time-barred.

Defendant is entitled to summary judgment on Counts I and II.

**B. Retaliation Claims** (Count III)

Plaintiff alleges in Count III that Defendant acted adversely to affect his employment in retaliation for his filing discrimination charges against it, in violation of Title VII and presumably the ADEA.   (Paper 1 ¶ 56).[5]   The complaint includes a long list of alleged acts of retaliation, although it is not clear

---

[5]   Plaintiff cites Title VII only in raising his retaliation claims.   The anti-retaliation provisions of Title VII and the ADEA are similar and cases interpreting Title VII are frequently relied upon in interpreting the ADEA.   *See, e.g.*, *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1226 n.1 (5th Cir. 1996).

whether they are alleged to be individually actionable acts of retaliation, components of an allegedly hostile environment, or simply evidence to be considered.   As noted above, Plaintiff's opposition memorandum lists the following five actions: the decision to lower his overall performance evaluation, the decision to institute an investigation by OIA, the denial of speaking engagements, the denial of inspections, and the change of office and work schedule.   Plaintiff also appears to allege that his demotion and the loss of the cash award were discriminatory acts of retaliation.

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."   42 U.S.C. § 2000e-3(a).   The ADEA contains a nearly identical provision prohibiting retaliation for complaining of employment discrimination on the basis of age, *see* 29 U.S.C. § 623(d), and the same standards and burdens apply to claims under both statutes. *See, e.g.*, *Terry v. Ashcroft*, 336 F.3d 128, 141 (2$^d$ Cir. 2003).   A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method.   *Rhoads v. F.D.I.C*, 257 F.3d 373, 391 (4th Cir. 2001).

Under the indirect method of proof, to establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in protected activity, 2) his employer took action that would be

materially adverse to a reasonable employee or job applicant, and 3) there is a causal connection between the protected activity and the asserted adverse action. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 n.2 (4th Cir. 2007). In determining whether the alleged retaliatory action is materially adverse as required for the second element, the court should ask whether it was harmful enough to have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2409 (2006). If the plaintiff makes such a showing, then the burden shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). The employee then has the opportunity to prove that the asserted reason is pretextual. *Id.; see also Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000)("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII").

Plaintiff satisfies the first element of the *prima facie* case because he engaged in protected activity when he contacted the EEO counselor on July 21, 2003. Plaintiff also alleges that he met with Dr. Rachel Behrman, Deputy Director of the FDA Office of Medical Policy, to complain about Dr. Rhoads' discriminatory practices on or before April 15, 2003 (Paper 1 ¶ 24), and complained to his own supervisors, including Dr. Rhodes, about their actions, and that these interactions constitute protected

activity.  Defendant concedes that Plaintiff met with Dr. Behrman, but states that Plaintiff did not allege any unlawful discriminatory activity by Dr. Rhoads at the meeting.  (Paper 10, at 38).  Moreover, Defendant has presented evidence that the meeting was not as Plaintiff alleged and significantly that Dr. Rhoads was not informed that the meeting occurred.  (Paper 10, Ex. 33, Behrman Decl. ¶¶ 6, 8).  Nonetheless Defendant concedes that these conversations could be viewed as opposition conduct.  (Paper 31, at 2).

As will be seen, however, Plaintiff's discrete retaliation claims fail either because they were not materially adverse or because, as with the discrimination claims, he cannot prove that Defendant's legitimate nondiscriminatory reasons are pretext.

### i. Adverse Actions: Materiality

The Fourth Circuit instructs that *White*'s material adversity standard indicates that "trivial harm is not enough to constitute an adverse action; rather, the harm must be material." *Csicsmann v. Sallada*, 211 Fed.Appx. 163, 168 (4th Cir. 2006).  In another case, the Fourth Circuit held that neither the plaintiff's low performance evaluation nor her removal from an alternative work schedule were sufficient to meet *White*'s standard of actions that could "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Parsons v. Wynne*, 221 Fed.Appx. 197, 198 (4th Cir. 2007)(citing *White*, 126 S.Ct. at 2415).

### a. Lowered performance evaluation

Plaintiff asserts that Defendant's lowering his performance evaluation in 2003 constitutes an adverse employment action. Plaintiff asserts that he had worked 19 years for Defendant and that he had never previously received a "fails to meet" score on a component of his performance evaluation.  Defendant notes that Plaintiff received an overall score of "Meets Performance Measures" and that this is the same overall score that Plaintiff received in two of the prior four years.  Defendant argues that the overall rating of "Meets Performance Measures" and not an individual "fails to meet" component score is the relevant measure.  The evidence in the record does not show that Plaintiff's 2003 performance evaluation was materially adverse to a reasonable employee.  A reasonable employee would not be dissuaded from complaining of unlawful discrimination because of an overall rating of "Meets Performance Measures" that mirrored his overall score in two of the prior four years and that was based in large part upon his violation of office protocal.  Accordingly, Plaintiff's retaliation claim for the evaluation fails.

### b. Decision to institute OIA investigation

Similarly Plaintiff and Defendant dispute whether the decision to institute an OIA investigation constitutes an adverse employment action.  Plaintiff alleges that Defendant falsely alleged that he engaged in misconduct and directed the OIA to investigate.

25

Defendant notes that the OIA investigation was ultimately closed without leading to any discipline.  Further, Defendant explains that the investigation was initiated based on evidence that suggested that Plaintiff might have released confidential commercial information for a second time.  Because no harm occurred from the abandoned investigation, the OIA investigation cannot meet the Fourth Circuit's requirement that any adverse action cause material harm and not mere trivial harm.  *See Csicsmann* at 168.

### c. Denial of speaking engagements

Plaintiff asserts that Defendant's denying him public speaking opportunities constitutes a materially adverse employment action because it "seriously damaged [his] standing and reputation." (Paper 24, at 37).  Defendant claims that mere reputational harm is insufficient, that public speaking was not part of Plaintiff's job duties, and that he was one of many employee's whose public speaking was curtailed as part of an office wide policy change.  A reasonable employee who was under investigation for malfeasance and subsequently suspended for two weeks for violating office policy would not infer that being public speaking opportunities was materially adverse and retaliatory in the face of an office wide reduction in public speaking.  Accordingly, Plaintiff's claim to the denied public speaking engagements fails.

### d.  Denial of inspections

Plaintiff alleges that he was not permitted to conduct inspections of clinical trials in retaliation for his protected activity. Defendant argues that inspections were not materially adverse because mere harm to an employee's reputation is insufficient. Because a reasonable employee would not have the found the challenged action "materially adverse," or likely to "dissuade[] a reasonable worker from making or supporting a charge of discrimination," Plaintiff's retaliation claim for the denial of inspections fails. *White*, 126 S.Ct. at 2415.

### e. Change of office and threatened work schedule.

Finally, Plaintiff alleges that his being forced out of his larger office and into a smaller one and that his being threatened with the loss of his modified work schedule constitute adverse employment actions.  Defendant counters that Plaintiff's being moved to a different office was a natural corollary of his loss of supervisory duties and that the discussed work schedule change was a result of a preexisting policy and ultimately never occurred. Plaintiff's claim that Defendant's moving him from the supervisor designated office that he held during his tenure as branch chief into an office designated for reviewers following Defendant's reassignment to that role does not constitute material adversity for purposes of Plaintiff's establishing a *prima facie* case of retaliation.  Defendant provides evidence that Plaintiff's office

was designated a supervisor office and evidence that there was a preexisting office policy requiring written approval for modified work schedules.  Because Defendant offers evidence that establishes that the work schedule discussion and office move were based on preexisting nondiscriminatory policies, a reasonable employee would not be "dissuaded . . . from making or supporting a charge of discrimination" under the circumstances.  Moreover, plaintiff cannot establish materially adverse harm from a mere threat to his work schedule that never was effectuated.  Indeed, the Fourth Circuit has held that actual removal from an alternative work schedule was insufficient to meet *White*'s materiality standard. *Parsons*, 221 Fed.Appx. at 198.  Accordingly, Plaintiff's claims to the work schedule and the office move fail.

### ii. Legitimate Nondiscriminatory Reasons and Pretext

Even if Plaintiff were able to establish a *prima facie* case of discriminatory retaliation as to any specific action, Defendant would still be entitled to summary judgment on Plaintiff's retaliation claim because Defendant has offered legitimate nondiscriminatory reasons for its actions which Plaintiff has failed to undermine as pretext.  Every alleged adverse employment action against Plaintiff occurred *after* Plaintiff was found to have violated FDA regulations by releasing confidential commercial information without authorization.  Defendant has established that the protection of confidential commercial information is an

28

essential component of Plaintiff's former job responsibilities and that it lost confidence in his ability to serve as a supervisor because of Plaintiff's failure properly to safeguard such information and because of other complaints about his management of those he supervised.  Defendant's decisions to demote Plaintiff, to give him a lower performance rating, to bar Plaintiff from speaking publicly on behalf of FDA, to move him to a smaller office, and to deny him a discretionary cash award all stemmed from Plaintiff's unauthorized release of confidential commercial information. Defendant has established that Plaintiff failed to perform his job responsibilities properly when he made the unauthorized release and has established that demoting him, limiting his speaking engagements, placing him in a different office, and denying him a cash award later that year were all legitimate nondiscriminatory responses to Defendant's disappointment with Plaintiff's performance.  Defendant has also established that the OIA investigation was initiated in response to concerns that Plaintiff improperly released confidential commercial information, an offense for which he had been previously disciplined.

Defendant has established that its actions regarding Plaintiff's work schedule were based on legitimate nondiscriminatory reasons.  Defendant has presented evidence that FDA and the National Treasury Employee's Union (NTEU) had a preexisting agreement to require core hours from 9:30 a.m. to 3:30

p.m. unless the employee had submitted a written request for an exemption. (Paper 10, Ex. 5, Salewski Decl., Att. A). Plaintiff does not contest that he did not seek a written exemption to the policy and that accordingly he was informed that he was required to comply with the policy. (*Id.* ¶ 28). Further, Defendant has established that all of its employees were in fact required to work the core hours or to receive a written exemption. (*Id.* ¶ 29).

Plaintiff has failed to establish that Defendant's legitimate nondiscriminatory reasons for the alleged adverse employment actions against him are pretext. This court's duty is not to determine the appropriateness of Defendant's legitimate nondiscriminatory reason but only to verify that it was the cause in fact of the adverse employment action. *DeJarnette*, 133 F.3d at 299. Plaintiff's assertions that Defendant was overly punitive and made offensive stray remarks do not undermine Defendant's legitimate nondiscriminatory reasons. Neither does Plaintiff's mere speculation that the alleged justification must be pretext. *e.spire Communications*, 135 F.Supp.2d at 663-64.

### iii. Hostile Work Environment

Although not pled in the complaint, Plaintiff appears to contend that the cumulative effect of these actions created a hostile environment in retaliation for all of his protected activity. (Paper 24, at 20-21). Hostile work environment claims are cognizable on the basis of national origin and generally apply

the same standards as are used in sexual harassment hostile work environment claims. *See Baqir v. Principi*, 434 F.3d 733(4th Cir. 2006).  Plaintiff failed to file a formal complaint of retaliation with regard to the alleged denial of the 2005 cash award with the EEOC despite being notified of his right to file a formal complaint.  Plaintiff appears to believe that arguing his unexhausted claim to the denied cash award is part of a hostile environment of retaliation will allow him to overcome his failure to exhaust under the continuing violation doctrine.  However, the continuing violation doctrine exhaustion exception does not encompass discrete actions. *Malghan v. Evans*, 118 Fed. Appx. 731, 734 (4th Cir. 2004).

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period.... All prior discrete discriminatory acts are untimely filed and no longer actionable.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Annual discretionary cash awards are discrete acts. *Lurie v. Meserve*, 214 F.Supp.2d 546 (D.Md. 2002).  Thus because Plaintiff's claim to the cash award was not exhausted and is not eligible for the continuing violation doctrine because it is a discrete act, his claim to the cash award fails.

Moreover, to succeed a hostile work environment claim must allege both objective and subjectively severe and pervasive conduct that alters the conditions of employment and creates an abusive work environment. *Anderson v. G.D.C., Inc.*, 281 F.3d 452 (4th Cir. 2002). "[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris v. Forklift Sys., Inc* 510 U.S. 17, 21-22 (1993). Plaintiff offered no evidence of subjective or objectively severe and pervasive harassment which would create an abusive environment. Accordingly, Defendant is entitled to summary judgment on Count III.

## C. Plaintiff's Request for Discovery

Because Plaintiff has not produced evidence sufficient to withstand summary judgment, it is necessary to address his claim that Defendant's motion for summary judgment should be denied as premature because Plaintiff has not had discovery. (Paper 24, at 2, 29, 43). In his opposition memorandum, Plaintiff claims he needs discovery to establish his *prima facie* case of age and national origin discrimination and that any legitimate nondiscriminatory reasons that Defendant offers are pretext. (*Id.*) Plaintiff argues that discovery is necessary to confirm the age and national origin of Dr. Ball. Plaintiff seeks evidence of Dr. Rhoads intent and motive and statistical evidence regarding the

national origins of individuals that Dr. Rhoads promoted. Additionally, Plaintiff seeks a complete copy of Dr. Behrman's affidavit.[6]

Generally speaking, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986); Fed.R.Civ.P. 56(f). "'Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party[,]"' and when a case involves complex factual questions about intent and motive. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247 (4th Cir. 2002), quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2741 at 241 (3rd ed. 1998).

A party opposing summary judgment may not merely assert in the opposition that discovery is necessary. Rather, the party must file an affidavit that "particularly specifies legitimate needs." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). Moreover, as this court has noted, a request for discovery will not be granted if the party merely wishes to conduct a "fishing expedition" in search of evidence that may be helpful. *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002). In addition to the

---

[6] Apparently the ECF and Plaintiff's copies of Dr. Behrman's affidavit (Paper 10, Ex. 33) were missing the second page.

specificity requirement, a party must present reasons why it cannot put forth the necessary opposing evidence, *see Pine Ridge Coal Co. v. Local 8377, United Mine Workers of Am.*, 187 F.3d 415, 421-22 (4th Cir. 1999), and must establish that the desired evidence could be sufficient to create a genuine issue of material fact.   *See McLaughlin v. Murphy*, 372 F.Supp.2d 465, 470 (D.Md. 2004).   If a party meets this burden, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."   Fed.R.Civ.P. 56(f).

Plaintiff has filed an affidavit specifying his discovery needs. (Paper 24, Ex. 14).   Plaintiff's request to confirm Dr. Ball's age and national origin is moot.   Defendant has stipulated that Dr. Ball was born in 1960 and is not of middle eastern origin. (Paper 31, at 24 n.8).   Moreover, this court's decision to grant summary judgment for Defendant is not based on Plaintiff's failure to establish a *prima facie* case, but rather his failure to establish pretext.

Plaintiff's request for discovery to obtain a new complete copy of Dr. Behrman's affidavit also fails.   Defendant submitted a notice of a substitution of exhibit on September 3, 2007, in which he presented a complete copy of the affidavit. (Paper 28). Accordingly, Plaintiff does not have a specific legitimate need to

discover the contents of the second page of Dr. Behrman's affidavit.

Finally, Plaintiff's other requests for discovery do not specify particular, legitimate needs; instead his requests are more akin to a fishing expedition in search of helpful evidence. *See Adams v. Giant Food, Inc.*, 225 F.Supp.2d 600, 607 (D.Md. 2002), *quoting Goodell v. Rehrig Int'l, Inc.*, 683 F.Supp. 1051, 1054 (E.D.Va. 1988) ("'[T]he mere hope that something might turn up in further discovery does not satisfy the standards of Rule 56(f).'"). Thus, the court will deny Plaintiff's request to stay this decision.

## IV. Conclusion

For the foregoing reasons Defendant's motion for summary judgment will be granted.  A separate Order will follow.

```
          /s/
_____
DEBORAH K. CHASANOW
United States District Judge
```